*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ELETICIA QUALLS,

Petitioner-Appellant,

v

TOWNSHIP OF GOODLAND,

Respondent-Appellee.

UNPUBLISHED
October 31, 2025
9:53 AM

No. 368820
Tax Tribunal
LC No. 20-004085

Before: WALLACE, P.J., and RIORDAN and REDFORD, JJ.

PER CURIAM.

Petitioner appeals as of right the Michigan Tax Tribunal's final opinion and judgment, which, in relevant part, determined that three cargo containers were fixtures on petitioner's real property and established the 2020 and 2021 true cash value (TCV), state equalized value (SEV), and taxable value (TV) of the property. We affirm in part, reverse in part, and remand to the tribunal for further proceedings consistent with this opinion.

## I. FACTUAL BACKGROUND

This case involves a dispute between the parties regarding the TCV of petitioner's property for tax years 2020 and 2021, and specifically whether the TCV should have included the value of three cargo containers on the property. The property in question consists of about 80 acres of land and is agricultural in nature. Petitioner does not live on the property, but her husband, Glen Qualls (Glen), does. However, there is no dispute that petitioner is the owner of the property and is responsible for the property taxes.

At all relevant times, the property contained a mobile home and three dark-green cargo containers on the real property at issue. The containers are shown in the photograph of them below.



Ronald Cischke is respondent's township assessor and supervisor. Cischke has served as the township assessor since 1969. For tax year 2019, Cischke assessed the property, but did not include the value of the three cargo containers in the TCV. However, for tax year 2020, Cischke's assessment of the TCV for the property was significantly higher than it was for tax year 2019. Cischke assessed the TCV at $326,264, the SEV at $163,100, and the TV at $76,308. Relevant to this appeal, the 2020 valuation report included a new assessment for a "[l]ow cost shed" on the property, which had a TCV of $31,464. The parties dispute the identity of the low-cost shed. Glen, who served as petitioner's authorized representative in the tribunal and testified on her behalf at the hearing, maintained that the low-cost shed referred to an old shed that was torn down before the 2020 tax assessment, and Cischke maintained that the low-cost shed referred to the three cargo containers. The TCV again increased for tax year 2021, and included the low-cost shed item.

Cischke testified that he determined the TCV for the cargo containers using rules outlined by the Michigan State Tax Commission's *Assessor's Manual* (2017 ed) (the STC Manual). The cargo containers were somewhere between 320 square feet to 400 square feet in size. Yet, for purposes of the TCV, Cischke treated the cargo containers as 1,000 square feet each. Cischke explained that cargo containers are new to the assessment industry and, until the state of Michigan provides a more specific guideline on how to value them, he uses a standard 1,000 square foot size as a matter of course for all cargo containers. Respondent requires a permit for cargo containers, and it is unclear from the record whether Glen or petitioner obtained permits for the containers.

According to Glen, he purchased the three cargo containers for a total cost of under $5,000. So, in his view, the TCV was far less than what the 2020 assessment reflected. In addition to Glen's testimony, the tribunal admitted a 2015 e-mail exchange showing Glen's communications during the purchase of the cargo containers, which supported the amount he paid for the containers. The cargo containers each weigh about 8,000 to 9,000 pounds. The cargo containers can only be moved a long distance through the use of equipment such as a bulldozer to drag them, or on the back of a flatbed truck. The containers can be moved short distances by jacking them up and sliding a dolly under them.

Petitioner protested the 2020 tax assessment to respondent's Board of Review in March of that year. The Board of Review did not change the TCV, explaining that its decision was "[d]ue

to law interpretation," and the Board recommended that petitioner take the issue to the tribunal. In August 2020, appellant petitioned the tribunal for a hearing before the Entire Tribunal Division. Petitioner alleged that the assessed values were "extremely inflated" and "without any basis in reality whatsoever." Relevant to this appeal, petitioner requested that the tribunal remove from the TCV the value of the three cargo containers.

While the 2020 petition was pending in the tribunal, petitioner received the 2021 tax assessment, which also contained the low-cost shed, and challenged that assessment before the March 2021 Board of Review. The Board of Review concluded that the low-cost shed referred to the cargo containers, which the Board of Review concluded were portable in nature and therefore not taxable. The Board of Review decreased the TCV of the property for the 2021 tax year by over $10,000. Petitioner, who presumably continued to dispute the overall TCV in the 2021 valuation report, amended her petition in the tribunal to include the 2021 tax year.

Cischke prepared the 2022 valuation report for the property while this case was pending. The 2022 valuation report did not include a low-cost shed item. According to Glen, Cischke told him on January 31, 2022, that the low-cost shed was an old shed on the property that was removed sometime before 2020. In Glen's view, the reason the low-cost shed was removed from the tax roll for 2022 and beyond was because he told Cischke during their conversation that the old shed was no longer on the property. For his part, Cischke testified unequivocally at the hearing that the low-cost shed referred to the three cargo containers. He explained that he removed the item from the 2022 valuation report because of the Board of Review's 2021 decision.

After receiving the 2022 tax assessment, petitioner moved to add tax year 2022 to the matter in the tribunal. The tribunal granted the motion to amend, but the tribunal severed the 2022 tax year and assigned it a separate docket number. The tribunal also ordered the parties to participate in a joint inspection of the property. During the joint inspection, Cischke took the photograph depicted earlier. Petitioner then filed a second-amended petition in this matter on July 15, 2022, in which she raised detailed factual allegations and requested that the tribunal conclude that the assessed values of the property should remain what they were in 2019. The tribunal took no action in relation to the second-amended petition, reasoning that petitioner would need to file a motion to amend the petition and submit a filing fee.

The tribunal heard the matter over the course of two days in November 2022. Glen again served as petitioner's representative during the hearing, and Cischke represented respondent. Cischke testified in detail about the method through which he conducted measurements of the cargo containers, and the method by which he calculated the TCV.

In September 2023, the tribunal issued its written, final opinion and judgment. Relevant to this appeal, the tribunal reduced the TCV of the property for 2020 to $304,800, and reduced the TCV for 2021 to $328,400. The tribunal found that each cargo container weighed about 4 tons and was not portable without the use of special equipment. The tribunal found that the cargo containers were purchased during the marriage and, therefore, were marital property subject to taxation. Even if the cargo containers initially were separate property, petitioner and Glen commingled the property and annexed the containers to the land.

-3-

As for whether the cargo containers were fixtures, consistent with the tribunal's factual conclusion, Glen testified that they were able to be moved around the property, but required specialized equipment. Glen testified that he had no intention for the containers to be permanently affixed to the property, but he also had no immediate plans to move them. It was not clear what the cargo containers were used to store, but there was no dispute they were used for storage. The tribunal accordingly concluded that Glen's use of the containers as storage constituted "a compatible adaption of their use on the subject property." Therefore, the tribunal concluded the containers were fixtures and should be assessed as part of the real property. Thus, the tribunal reversed the Board of Review's decision for the 2021 tax year, and placed the cargo containers back on the tax roll.

As it related to the value of the cargo containers, the tribunal noted that the only evidence on value that Glen provided was the amount he paid for the first container in 2015, which was $1,700. In contrast, respondent struggled to find an appropriate value for the cargo containers in the STC Manual. The tribunal explained that the purchase price advocated by petitioner as the TCV was not an accurate assessment because the containers appreciated in value. The tribunal also found that the $1,700 per cargo container value advocated by petitioner did not include the transportation costs or the costs to set the cargo containers on the property. However, the tribunal found that respondent used the wrong square footage for the containers and noted that the containers were each 320 square feet. When 320 square feet is multiplied by a value of $10.49 per square foot, the TCV for the cargo containers should have been $10,068, rather than $31,464. The tribunal therefore modified the TCV, SEV, and TV for tax years 2020 and 2021.

Petitioner moved for reconsideration. The Michigan Tax Tribunal's presiding judge denied the motion, finding in relevant part that the tribunal committed a *de minimis* error by considering the transportation costs for the cargo containers, but ruling that the error did not affect the tribunal's TCV calculation. Therefore, reconsideration was denied. This appeal followed.

## II. ISSUES AND ANALYSIS

### A. Court-Reporter Expenses

Petitioner first argues the tribunal erred by requiring the parties to hire the court reporter for the hearing on the petition and pay the reporter's expenses. We disagree.

"This Court's review of agency decisions involving property-tax valuations is quite limited[.]" *New Covert Generating Co, LLC v Covert Twp*, 334 Mich App 24, 45; 964 NW2d 378 (2020). However, we recognize that this issue is procedural in nature, and we review de novo whether the tribunal properly interpreted and applied the court rules, and review for clear error the tribunal's related factual findings. *Id*. at 89-90. "A finding is clearly erroneous when, on review of the whole record, this Court is left with the definite and firm conviction that the Tax Tribunal made a mistake." *Id*. at 90. We review legal issues de novo. *Strata Oncology, Inc v Dep't of Treasury*, 348 Mich App 378, 387; 18 NW3d 367 (2023). The tribunal's ruling on this issue also related to its interpretation of its own regulations, which is an issue of law that we review de novo. *Airgas Specialty Prod v Mich Occupational Safety & Health Admin*, 338 Mich App 482, 495; 980 NW2d 530 (2021).

-4-

The tribunal is a quasi-judicial agency with authority over proceedings for a refund or determination of property taxes levied under Michigan law. MCL 205.721(1); MCL 205.731(b). The Legislature has granted the tribunal the power to promulgate its own rules on practice and procedure in accordance with the Administrative Procedures Act, MCL 24.201 *et seq*. MCL 205.732(d). These rules are known as the Tax Tribunal Rules (TTRs), which are codified as Mich Admin Code, R 792.10201 *et seq*. TTR 201 provides that the TTRs govern the practice and procedure in all contested cases and proceedings before the tribunal. See TTR 201, Mich Admin Code, R 792.10201(1). In general, the TTRs govern all tax-tribunal proceedings, but if no specific rule exists on a subject, then the tribunal will apply the Michigan Court Rules. *TRJ & E Props, LLC v Lansing*, 323 Mich App 664, 670 n 1; 919 NW2d 795 (2018).

The TTRs apply here, instead of the Michigan Court Rules. At the time of the November 2022 hearing, TTR 255(1) provided, "[a]ll hearings before the entire tribunal shall be recorded either electronically or stenographically, or both, in the discretion of the tribunal."[1] 2015 Annual Admin Code Supp, R 10255(1). Thus, under the tribunal's rules, the tribunal has the authority to order that the hearing be recorded.

Although the TTRs are silent on the issue of the court-reporting expenses, the tribunal's interpretation of former TTR 255(1) as permitting the tribunal to require the parties to hire and pay the reporter's expenses is reasonable because it is consistent with the regulation. That is, interpreting former TTR 255(1) as permitting an equal division of court-reporting expenses is permissible because the regulation itself is silent on that matter, and an equal division of such expenses distributes a fair burden to each party.[2] Moreover, this interpretation arguably is consistent with MCL 205.752(1), which generally provides that "[c]osts may be awarded in the discretion of the tribunal." In this case, the tribunal's prehearing conference summary and scheduling order provided that the parties must provide a court reporter for the hearing and provide an electronic copy of the transcript to the tribunal. The order specified, "[t]he costs attributable to the court reporter shall be shared equally by the parties." And, if the parties failed to pay the transcription costs, then the party or parties who failed to pay may be held in default. As explained, the tribunal's order fell within the scope of its discretion as outlined under former TTR 255(1). Finally, while petitioner suggests the TTR is unconstitutional, she does not provide any legal or

---

[1] The TTRs were amended the year following the hearing, and the relevant rule was recodified in TTR 259(1), Mich Admin Code, R 792.10259(1). The recodified rule contains only one minor, stylistic change, which is the substitution of the word "must" for the word "shall." *Id*.

[2] Ordinarily, "an agency's interpretation of its own regulation is of controlling weight unless it is plainly erroneous or inconsistent with the regulation." *Airgas Specialty Prod*, 338 Mich App at 495 (quotation marks and citation omitted). However, that deference generally is appropriate when "the agency's interpretation . . . in some way implicate[s] its substantive expertise." *Kisor v Wilkie*, 588 US 558, 577; 139 S Ct 2400; 204 L Ed 2d 841 (2019). Further, "the regulatory interpretation must be one actually made by the agency. In other words, it must be the agency's authoritative or official position, rather than any more *ad hoc* statement not reflecting the agency's views." *Id*. (quotation marks and citation omitted). In light of these considerations, we question whether such deference is appropriate in this case but, in any event, we find no reason to disturb the tribunal's interpretation of its own regulation here.

-5-

factual basis for this argument, which we find abandoned. See *Berger v Berger*, 277 Mich App 700, 712; 747 NW2d 336 (2008) ("A party abandons a claim when it fails to make a meaningful argument in support of its position.").

We note that even assuming the Michigan Court Rules applied in this situation instead of former TTR 255(1), none of the court rules cited by petitioner prohibits the tribunal from requiring the parties to secure the court reporter and pay the reporter's expenses. Petitioner argues that the tribunal was bound by MCR 1.109 and MCR 8.119. However, these two court rules apply more generally to the keeping of court records and do not prohibit a tribunal from requiring the parties to secure the court reporter and pay the resulting fees. Specifically, MCR 1.109 governs the filing of documents with a court, and MCR 8.119 relates to court records and reports. Both court rules are lengthy, and neither provides support for petitioner's position.

Petitioner also cites MCR 2.002, which outlines the procedure for waiving fees for indigent individuals under certain circumstances. However, petitioner did not request a waiver of fees as contemplated under MCR 2.002(B), and has not represented on appeal that she is indigent. Therefore, MCR 2.002 would not apply in this case. Petitioner does not cite any other legal authority that would constrain the tribunal's discretion to require the parties to secure the court reporter and bear the associated expenses. For these reasons, the tribunal did not err by requiring the parties to secure the court reporter and pay the reporting expenses.[3]

B. Fixtures

Petitioner next argues that the tribunal erred by finding that the cargo containers were fixtures and were taxable for purposes of determining the TCV. We agree with petitioner.

Const 1963, art 6, § 28 provides, in relevant part, "[i]n the absence of fraud, error of law[,] or the adoption of wrong principles, no appeal may be taken to any court from any final agency provided for the administration of property tax laws from any decision relating to valuation or allocation." Thus, as this Court has explained, "[u]nless there is fraud, this Court's review of Tribunal decisions is limited to determining whether the Tribunal erred in applying the law or adopted a wrong legal principle." *Empire Iron Mining Partnership v Tilden Twp*, 337 Mich App 579, 585; 977 NW2d 128 (2021) (cleaned up).

The tribunal's factual findings are considered final as long as they are supported by competent, material, and substantial evidence on the whole record. *Pontiac Country Club v Waterford Twp*, 299 Mich App 427, 434; 830 NW2d 785 (2013). "Substantial evidence supports the Tribunal's findings if a reasonable person would accept the evidence as sufficient to support

---

[3] Generally, in civil cases, the appellant pays for transcripts. See MCR 7.210(B)(1)(a). However, if the appellant prevails in this Court, those costs are taxable to the appellee. See MCR 7.219(G)(3). Moreover, MCR 3.215(D)(4)(b) provides that in certain domestic-relations proceedings, "[i]f ordered by the court, or if stipulated by the parties, the referee must provide a transcript, verified by oath, of each hearing held. The cost of preparing a transcript must be apportioned equally between the parties, unless otherwise ordered by the court." MCR 3.215(D)(4)(b) is consistent with former TTR 255(1) as interpreted by the tribunal in this case.

the conclusion." *Id.* "Substantial evidence must be more than a scintilla of the evidence, although it may be substantially less than a preponderance of the evidence." *Great Lakes Div of Nat'l Steel Corp v Ecorse*, 227 Mich App 379, 388; 576 NW2d 667 (1998). We will not disturb the tribunal's findings about the credibility of the witnesses. *Detroit Lions, Inc v Dearborn*, 302 Mich App 676, 703; 840 NW2d 168 (2013).

The General Property Tax Act (GPTA), MCL 211.1 *et seq.*, provides that all real and personal property located within Michigan that is not expressly exempted under the statute is subject to taxation. MCL 211.1. See also *Continental Cablevision of Mich, Inc v Roseville*, 430 Mich 727, 734-735; 425 NW2d 53 (1988). MCL 211.2, a provision of the GPTA, provides, in relevant part:

> For the purpose of taxation, real property includes all the following:
>
> (a) All land within this state, all buildings and fixtures on the land, and all appurtenances to the land, except as expressly exempted by law. [MCL 211.2(1)(a).]

The critical issue before us is whether the cargo containers were real property or personal property.[4] "The term 'fixture' necessarily implies something having a possible existence apart from realty, but which may, by annexation, be assimilated into realty." *Wayne Co v Britton Trust*, 454 Mich 608, 614-615; 563 NW2d 674 (1997) (cleaned up). As this Court has explained, the test for whether property is considered a fixture involves a three-part analysis, which is outlined as follows:

> (1) whether the property was actually or constructively annexed to the real estate; (2) whether the property was adapted or applied to the use or purpose of that part of the realty to which the property in question is connected or appropriated; and (3) whether the property owner intended to make the property a permanent accession to the realty. [*Tuinier v Bedford Charter Twp*, 235 Mich App 663, 668; 599 NW2d 116 (1999).]

---

[4] MCL 211.2(1)(a) essentially provides that "real property" includes "land," "buildings," "fixtures," and "appurtenances." The tribunal found that the cargo containers are "fixtures," and there is no suggestion by respondent on appeal that the cargo containers are, or could be, one of the three other subjects listed in the statute. Thus, we confine our analysis to "fixtures." We note, however, that the caselaw discussing "fixtures" typically concerns smaller items that are attached to real property, such as bank-vault doors and window curtains. See, e.g., *Mich Nat'l Bank, Lansing v Lansing*, 96 Mich App 551, 554; 293 NW2d 626 (1980), aff'd by equal division 414 Mich 851 (1982); *Wayne Co v Britton Trust*, 454 Mich 608, 616; 563 NW2d 674 (1997). While this Court has concluded that a mobile home is a "fixture" as well, *Ottaco, Inc v Gauze*, 226 Mich App 646, 652; 574 NW2d 393 (1998), the term "building" may be more appropriate for describing a mobile home.

All three of these elements must be satisfied for property to be considered a "fixture." See *Britton Trust*, 454 Mich at 610.[5] To illustrate application of the three-part test, in *Ottaco, Inc v Gauze*, 226 Mich App 646, 651; 574 NW2d 393 (1998), this Court held that a mobile home was a fixture because the defendants had ownership interests in the mobile home and the land on which it was situated, the mobile home became annexed when it was placed on a concrete foundation, and the mobile home had other "attributes of a conventional, permanent dwelling," such as a porch and utility hookups. Thus, this Court concluded that "[i]n every respect, the mobile home was integrated with and adapted to the use of the real property, which property was zoned for single-family residential use." *Id*. at 651-652. This Court noted that this was the case notwithstanding that the mobile home theoretically could be moved to another location because the objective facts showed the defendants' intent was to make the mobile home a permanent accession to the real property. *Id*. at 652.

In this case, the tribunal ruled:

> Limited testimony and evidence were presented with whether [sic] the containers should be treated as fixtures. The Township requires a building permit for the cargo containers. Respondent's cost is $11,400 per container. Mr. Qualls argued throughout the hearing that the three 8 x 40 cargo containers are "portable" and should not be assessed as real property. They have existed at the property for several years, meaning they have been annexed to the property, either actually or effectively. They cannot be moved or relocated absent specialized equipment. Regarding the permanency of the containers, Petitioner's representative stated there is no desire for the containers to be affixed to the property, but neither was there any immediate plans to move them, and they remained at the subject property at the time of the hearing, which was more than three years after the first Tax Day at issue. The containers are used for storage, and although it is unclear from the record precisely what is stored in the containers, the Tribunal finds that Petitioner's representative using the containers as storage is a compatible adaptation of their use

---

[5] The partial concurrence and dissent seems to advocate, contrary to binding caselaw, that the applicable three-element test to determine whether an object is a fixture essentially is a balancing test, with no single element being dispositive. If so, the partial concurrence and dissent misapprehends the law. In *Britton Trust*, our Supreme Court summarized its holding in the first paragraph of the opinion as follows: "Property is a fixture if (1) it is annexed to the realty, whether the annexation is actual or constructive; (2) its adaptation or application to the realty being used is appropriate; *and* (3) there is an intention to make the property a permanent accession to the realty." *Britton Trust*, 454 Mich at 610 (emphasis added). The use of the term "and" indicates that the three elements are conjunctive. See Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* (St Paul: Thomson/West, 2012), p. 116 ("Under the conjunctive/disjunctive canon, *and* combines items while *or* creates alternatives. . . . With the conjunctive list, all three things are required . . . ."). Indeed, MI Civ JI 90.20 provides that "[a]n item is a fixture if it meets *all three* of the following criteria . . . ." (Emphasis added).

on the subject property. The Tribunal therefore finds that the cargo containers are fixtures and should be assessed as part of the real property.

We disagree with the tribunal as the cargo containers do not satisfy the first element of the three-part test outlined in cases such as *Tuinier*. With regard to the first element, our Supreme Court has discussed annexation as follows:

> [T]he act of attaching or affixing personal property to real property and, as a general proposition, an object will not acquire the status of a fixture unless it is in some manner or means, albeit slight, attached or affixed, either actually or constructively, to the realty. That is, if the object is not attached to the land or to some structure or appliance which is attached to it, it will retain its character as personalty even though intended for permanent use on the premises. [*Britton Trust*, 454 Mich at 615 (quotation marks and citation omitted).]

Simply put, "[i]f an object is not physically affixed to the realty, it may acquire the status of a fixture by constructive annexation." *Id*. That is, to satisfy the first element, the object must be actually or constructively affixed to the real property. See *id*. "The doctrine of constructive annexation has frequently been applied in the case of articles which are not themselves actually or directly annexed to the realty, but are part of, or accessory to, articles which are so annexed." *Id*. at 618 (quotation marks and citation omitted). Thus, for example, "where the principal part of the machinery is fixture due to actual annexation to the realty, the parts of it, although not actually annexed to the freehold, are fixtures where they would, if removed, leave the principal part unfit for use, and where of themselves they are not capable of general use elsewhere." *Id*. (cleaned up).

Further, our Supreme Court has explained that the question of constructive annexation concerns whether removal of the object at issue "from the realty would impair both [its] value and the value of the realty." *Id*. at 616. For instance, in *In re Slum Clearance*, 332 Mich 485; 52 NW2d 195 (1952), our Supreme Court concluded that "the molten metal and solutions were constructively annexed to the melting pots (a fixture on the realty) because the molten metal and solutions were useless without the melting pots and the melting pots were useless without the molten steel and solutions[.]" *Britton Trust*, 454 Mich at 617. Our Supreme Court's approach is consistent with 35 Am Jur 2d, Fixtures, § 10, which provides:

> For the purpose of determining whether an object is a fixture, constructive annexation may be found when the object, although not itself attached to the realty, *comprises a necessary, integral, or working part of some other object which is attached.*

> Under some states' test for determining whether a chattel has become a fixture, light or constructive attachment to realty is all that is required, as long as the other elements are established. Constructive annexation to the realty occurs when *removal leaves the personal property unfit for use so that it would not of itself and standing alone be well adapted for general use elsewhere*. [Footnotes omitted; emphasis added.]

-9-

To illustrate application of these principles, in *Fane v Detroit Library Comm'n*, 465 Mich 68; 631 NW2d 678 (2001), our Supreme Court concluded that a "portable ramp" attached to the doorstep of a building was not a "fixture," reasoning as follows:

> The characteristics of the portable ramp indicate that it is personal property with a possible existence apart from the doorstep of the Fairlane Estate building. As such, the fixtures analysis is applicable.
>
> There is no dispute that the portable ramp was not physically attached to the building and could readily be removed. *Wayne Co* states that annexation can be actual or constructive. *Constructive annexation occurs where the item cannot be removed from the building without impairing the value of both the item and the building.* [*Wayne Co*, 454 Mich at 615-616]. *However, there is no evidence that removal of the ramp would impair the value of either the ramp or the building. Therefore, the ramp was not actually or constructively annexed to the building.* [*Id.* at 79-80 (emphasis added).]

Here, the cargo containers were not cemented, bolted, or otherwise physically attached to the property, i.e., the land itself. Thus, the cargo containers were not actually annexed to the property. Further, while the cargo containers each weighed over four tons, which suggests the possibility of "constructive annexation by massive weight,"[6] that doctrine does not apply here. The cargo containers, presumably, were manufactured and designed to transport various materials. Removing the cargo containers from the property would not impair their value or utility in any respect. See *Britton Trust*, 454 Mich at 616. In fact, the containers were designed to be readily movable whether by truck, train, or on a waterborne vessel. They are not "part of" or "accessory to" the property in the same respect as, for example, a "325-pound stage cover panel" in a gym, *Filizetti v Gwinn Area Comm Sch*, 509 Mich 902, 903 (2022), a milling machine used for a metal shop class, *Velmer v Baraga Area Sch*, 430 Mich 385, 387; 424 NW2d 770 (1988), "window shades, awnings, double doors and trim, base and shoe, red gum partitions, storm doors, . . . wall case and mirror, [and] pump tanks for elevator," *Colton v Mich Lafayette Bldg Co*, 267 Mich 122, 127; 255 NW 433 (1934), and other such objects that our Supreme Court has explained constitute "fixtures."[7] Likewise, there is no evidence in this case that removal of the containers from the property would affect the value of the realty.

---

[6] In *Velmer v Baraga Area Sch*, 430 Mich 385, 392, 396; 424 NW2d 770 (1988), our Supreme Court concluded that a milling machine arguably was a fixture by constructive annexation because it was "heavy enough so as not to require bolting to the floor." This reasoning has been characterized as "constructive annexation by massive weight." *Filizetti v Gwinn Area Comm Sch*, 509 Mich 902, 909 (2022) (ZAHRA, J., *dissenting*).

[7] Relatedly, in *In re Joseph*, 450 BR 679, 691 (Bankr ED Mich, 2011), the United States Bankruptcy Court for the Eastern District of Michigan applied Michigan law and concluded that the following objects were fixtures: window blinds, refrigerator, refrigerator door panels, dishwasher, garden bell, and wall-mounted mailbox.

Simply put, the doctrine of constructive annexation generally applies when the object at issue is, as a practical matter, attached to a larger object that itself is physically attached to the real property. See *Britton Trust*, 454 Mich at 618 ("The doctrine of constructive annexation has frequently been applied in the case of articles which are not themselves actually or directly annexed to the realty, but are part of, or accessory to, articles which are so annexed.") (quotation marks and citation omitted). Additionally, the object at issue generally has value by itself, and its value does not increase when it is placed on a piece of real estate. See 35 Am Jur 2d, Fixtures, § 10 ("Constructive annexation to the realty occurs when removal leaves the personal property unfit for use so that it would not of itself and standing alone be well adapted for general use elsewhere."). Stated otherwise, and critically for the purposes of this case, if removing the object at issue would not impair the value of the object, and would not impair the value of the realty, it is not a fixture. See *Fane*, 465 Mich at 80 ("Constructive annexation occurs where the item cannot be removed from the building without impairing the value of both the item and the building.").

The cargo containers in this case satisfy neither of these conditions. They were not attached to a larger object that itself is physically attached to the real property. Rather, the cargo containers were independently sited on the real property, i.e., the land, itself. Nor, more importantly, did the value of the cargo containers depend upon being attached to the real property. To the contrary, removing the cargo containers from the real property would do nothing to impair their value as instrumentalities used for shipping materials. Similarly, removing the cargo containers would not impair the value of the realty itself. Therefore, the constructive annexation doctrine does not apply in this case.

Accordingly, we conclude that the cargo containers did not satisfy the first element of the three-part test because they were not actually or constructively annexed to the realty. See *Britton Trust*, 454 Mich at 615. Because, the cargo containers did not satisfy the first element of the three-part test, it follows that they were not "fixtures" for the purposes of MCL 211.2(1)(a). See *id.* at 610. We therefore reverse the tribunal to this extent.[8]

## III. AMENDED PETITION

Finally, petitioner argues the tribunal erred by failing to accept for filing petitioner's July 15, 2022 second-amended petition. We disagree.

In general, a decision to grant or deny a motion for leave to amend the pleadings is reviewed for an abuse of discretion. *Titan Ins Co v North Pointe Ins Co*, 270 Mich App 339, 346; 715 NW2d 324 (2006). "An abuse of discretion occurs when the court's decision falls outside the range of

---

[8] Petitioner argues that the tribunal erred by ruling that the cargo containers were marital property subject to taxation because the tribunal overlooked that the containers were owned by Glen rather than petitioner. Petitioner also argues that the tribunal erred by failing to establish whether the low-cost shed (which she refers to as a "new farm building") was the three cargo containers or an old shed on the property before deciding the TCV of the three cargo containers, and that the tribunal overlooked that Cischke lacked jurisdiction over the cargo containers. In light of our conclusion that the cargo containers were not "fixtures," we need not reach these issues.

-11-

principled and reasonable outcomes." *Guerrero v Smith*, 280 Mich App 647, 660; 761 NW2d 723 (2008). However, as stated earlier, in the context of a tribunal appeal, our review of the substantive issues of valuation and allocation is very limited and examines whether there was fraud, error in applying the law, or the adoption of a wrong legal principle. *Empire Iron Mining*, 337 Mich App at 585. Additionally, the tribunal's factual findings are considered final as long as they are supported by competent, material, and substantial evidence on the whole record. *Pontiac Country Club*, 299 Mich App at 434. For procedural issues, we review de novo whether the tribunal properly interpreted and applied the court rules, and review for clear error the tribunal's related factual findings. *New Covert*, 334 Mich App at 89-90.

The standard of review relating to procedural issues applies to the tribunal's decision not to consider the second-amended petition without a motion for leave. But, the underlying issue of whether the tribunal should have considered more evidence about the 2022 tax year is reviewed under the more deferential standard of review for valuation decisions outlined in *Empire Iron Mining*.

A taxpayer may amend a petition to join all claims for a determination of the TV of property on the basis of the alleged unlawful assessments if the taxpayer pays additional taxes because of the unlawful assessments after filing the original petition. MCL 205.737(4). However, the taxpayer must move to amend the petition and include a motion fee as outlined in the statute. *Id*. TTR 227(1), Mich Admin Code, R 792.10227(1), currently provides:

> With the exception of amendments to petitions or answers that correct typographical or transpositional errors, a petition or answer may only be amended by leave of the tribunal. Leave to amend must, *with the exception of motions to amend to include a prior or subsequent tax year assessment in a property tax appeal*, be freely given when justice so requires. Amendments to include a prior or subsequent tax assessment in a property tax appeal must be filed as required under section 35a of the tax tribunal act, MCL 205.735a, and section 53a of the general property tax act, 1893 PA 206, MCL 211.53a. [Emphasis added.]

We note that at the time of the hearing, the rule was codified with substantially the same language in TTR 221, Mich Admin Code, R 792.10221, which provided, in relevant part:

> A petition or answer may be amended or supplemented by leave of the tribunal only. With the exception of amendments to include a prior or subsequent tax year assessment in property tax appeal, leave to amend or supplement shall be freely given when justice so requires. Amendments to include a prior or subsequent tax assessment in a property tax appeal must be filed as required by law. See section 35a of the tax tribunal act, MCL 205.735a and section 53a of 1893 PA 206, MCL 211.53a. [2015 Annual Admin Code Supp, R 792.10221(1).]

Under both iterations of the rule, amendments to include the 2022 tax assessment would need to comply with MCL 205.735a and MCL 211.53a. MCL 205.735a provides, in relevant part,

that "[a] petition or answer may be amended at any time by leave of the tribunal and in compliance with its rules." MCL 205.735a(9).[9]

Here, petitioner moved to amend the petition. In response, the tribunal granted petitioner's motion to include the 2022 tax year, but ordered that the 2022 tax year be severed and assigned a distinct docket number. On July 15, 2022, petitioner filed a second-amended petition, which included details about the 2022 tax year. Specifically, the second-amended petition outlined a conversation that allegedly occurred on January 31, 2022, in which Cischke allegedly told Glen that the low-cost shed referred to an old shed on the property, and not the cargo containers.

The tribunal took no action in relation to the July 15, 2022 second-amended petition because there was no corresponding motion for leave or motion fee. The tribunal cited former TTR 221(1) and explained that the petition could only be supplemented by leave of the tribunal. Petitioner was required to file a motion and pay the motion fee. Petitioner never moved for leave to file the second-amended petition and did not pay the motion fee, so the tribunal did not take further action in response to the second-amended petition. The tribunal's decision complied with former TTR 221(1), which provided that the decision whether to amend the petition is within the discretion of the tribunal, and the relevant statute, MCL 205.737(4), which contemplates the filing of a motion and a motion fee to amend the petition. The tribunal, therefore, did not err by failing to accept for filing the July 15, 2022 second-amended petition.

Even if we were to reach the merits of the issue, we note that the tribunal did not err by severing the 2022 tax year and refusing to consider facts relating to that tax year. The reason the tribunal severed the 2022 tax year was "[d]ue to the stage in which this case is at . . . and in the interest of judicial efficiency." By the time the tribunal entered the order, the matter had been pending almost two years. Thus, the tribunal's decision not to consider the additional factual allegations within the second-amended petition relating to tax year 2022 fell within its broad discretion and does not appear to be based on fraud or any error of the law. Moreover, the parties thoroughly explored the decision to remove the cargo containers from the 2022 tax roll during the hearing, and there was no dispute the cargo containers were on the property at all relevant times. As such, the tribunal's decision regarding the July 15, 2022 second-amended petition was not erroneous.

## IV. CONCLUSION

We affirm in part, reverse in part, and remand to the tribunal for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Randy J. Wallace
/s/ Michael J. Riordan

---

[9] MCL 211.53a relates to clerical errors on the part of the assessing officer and would not apply specifically in this case.